# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| SCOTT BRUNDAGE, | CASE NO. 5:22-CV-02086-BYP |
| Petitioner, | JUDGE BENITA Y. PEARSON |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| WARDEN TOM WATSON, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

## INTRODUCTION

Representing himself, Petitioner Scott Brundage, a prisoner in state custody, filed a petition on November 18, 2022 seeking a writ of habeas corpus under 28 U.S.C. § 2254. (ECF #1). The District Court has jurisdiction over the petition under § 2254(a). On November 21, 2022, this matter was referred to me under Local Civil Rule 72.2 to prepare a Report and Recommendation. (Non-document entry of Nov. 21, 2022). On March 31, 2023, Respondent Warden Tom Watson, as Warden of the North Central Correctional Complex (hereinafter, the State), filed the Return of Writ, including the state-court record and trial transcripts. (*See* ECF #10, 10-1, 10-2, 10-3, and 10-4). On July 3, 2023, Mr. Brundage filed a Traverse to the Return of Writ. (ECF #12). On November 26, 2024, I ordered the State to supplement the record with Mr. Brundage's state habeas corpus proceedings and a transcript of the hearing on Mr. Brundage's motion to withdraw his guilty plea (ECF #13), which the State did on December 17, 2024 (*see* ECF #14).

For the reasons that follow, I conclude all eleven grounds for relief are procedurally defaulted and Mr. Brundage has established neither cause and prejudice for the default nor his actual innocence. I thus recommend the District Court **DISMISS** the petition as procedurally defaulted. I further recommend the District Court **DENY** a certificate of appealability (COA).

PROCEDURAL HISTORY

I.     **State court factual findings**

The factual findings of the Ohio Court of Appeals, Ninth District, made on direct appeal are presumed correct unless Mr. Brundage rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Ninth District found as follows:

> {¶2} Mr. Brundage pleaded guilty to rape and multiple counts of gross sexual imposition. Within days of the plea hearing, and before the trial court sentenced him, Mr. Brundage sent a letter to the trial court indicating that he wished to withdraw his plea. In that letter, Mr. Brundage wrote that his attorneys pressured him into accepting the plea and made representations about his potential sentence that proved to be untrue. The trial court permitted his attorneys to withdraw, appointed new counsel, and held a hearing on the motion. Following that hearing, the trial court denied the motion. Mr. Brundage was sentenced to prison terms totaling twenty-four years, and he filed this appeal.

(ECF #1-1 at PageID 302; *State v. Brundage*, No. 29477, 2020 WL 927528, at *1 (Ohio Ct. App. Feb. 26, 2020)).

II.    **Trial court proceedings**

On August 1, 2017, a Summit County grand jury indicted Mr. Brundage on 17 counts, including corrupting another with drugs, gross sexual imposition, sexual imposition, and rape. (ECF #10-1 at PageID 180-85). On April 1, 2019, a jury was empaneled for trial and the next day, Mr. Brundage, through appointed counsel, indicated he wanted to change his plea. (*See id.* at PageID 190). On April 4, 2019, Mr. Brundage pled guilty to five counts of gross sexual imposition

and one count of rape. (*Id.*). The trial court then dismissed the remaining charges on the State's motion. (*Id.*).

On April 9, 2019, the trial court received a letter from Mr. Brundage explaining he wanted to withdraw his guilty plea because his appointed counsel coerced him and made him promises.[1] (*See* ECF #10-3 at PageID 488-90). Mr. Brundage asserted his attorneys stood so close to him that he was intimidated into signing the plea form and his attorneys preyed on his emotions by promising he would be able to walk his daughter down the aisle at her wedding within a few years of being sentenced. (*See* ECF #10-1 at PageID 194; ECF #10-3 at PageID 490; ECF #14-2 at PageID 885-86). Treating the letter as a motion to withdraw the guilty plea, the trial court scheduled a hearing and appointed Mr. Brundage new counsel. (*Id.* at PageID 487, 509-11).

On May 28, 2019, the court held a hearing into Mr. Brundage's request to withdraw his plea with new counsel representing Mr. Brundage. (*See* ECF #14-2). In the hearing, Mr. Brundage affirmed under oath the contents of his letter (*id.* at PageID 878-79) and the State introduced a recording of a jailhouse phone call Mr. Brundage placed on April 2, 2019 shortly after he returned to jail after his change-of-plea hearing. (*Id.* at PageID 883-83). The hearing transcript does not include a transcript of the phone call, but the trial court recounted the call as follows:

> In that phone call, Defendant recounted that his attorneys met with him after the first day of trial, advised him of the latest offer from the State, and suggested Defendant "sleep on it," and they would talk further in the morning (April 2, 2019.)
>
> During the phone call, Defendant rationalized that although the State took the life sentences off the table, the sentencing range could be anywhere from three (3) to

---

[1]  The letter itself is not in the state-court record before this court, though the trial judge summarized the allegations. (*See* ECF #10-3 at PageID 488-90). The letter's contents are also referenced in Mr. Brundage's appellate brief. (*See* ECF #10-1 at PageID 239). Because I conclude Mr. Brundage's petition is procedurally defaulted, the letter is not necessary for this Report and Recommendation.

twenty-nine (29) years, and during the plea hearing, the Judge had not indicated a number of years she was inclined to sentence Defendant to; therefore, no one knows what the sentence will be. When asked if he wanted to take the gamble by continuing the trial, Defendant stated if he "gets 15 or 16 years," "what's the difference," "it's a life sentence," and it's the "same as going to trial and losing" so, "why not go to trial and have a half way chance of beating it?" "Once she smacks the gavel down, I can't retract my plea. She could say twenty-five (25) years. That's twenty-five. That's life." Defendant went on to say, "There is no way she's [the Judge] going to give me three (3) years" or "eight (8), nine (9) years." Defendant stated, regarding his attorneys, "I understand they want to protect my interests and it's probably the best deal" and his attorneys advised him, "If you lose, you lose, it's all or nothing." But, Defendant went on to state, "if she socks me with twenty (20) some years, it's the same thing as going to trial and losing." Defendant then instructed his friend to contact his attorneys to let them know he wanted to retract his guilty plea and, "Just tell them that I thought about it . . . It would have been different if she [the Judge] would have gave somewhat of a number today . . . but, three (3) to twenty-nine (29), that's a big stretch."

(ECF #10-1 at PageID 210) (ellipses and parentheticals in original). Mr. Brundage's prior counsel was called to testify (ECF #14-2 at PageID 888-90), but Mr. Brundage asserted the attorney-client privilege, considerably limiting his attorney's testimony (*id.* at PageID 893-94).

Based on the jailhouse telephone call, the trial court concluded the fear of not knowing his ultimate sentence compelled Mr. Brundage to seek to withdraw his guilty plea. (ECF #10-1 at PageID 211). The trial court then denied Mr. Brundage's motion, concluding his change of heart regarding the plea and possible sentence was insufficient justification to withdraw his guilty plea. (*Id.* at PageID 212) (citing *State v. Drake*, 598 N.E.2d 115, 118-19 (Ohio Ct. App. June 24, 1991)).

On June 25, 2019, the trial court sentenced Mr. Brundage to an aggregate sentence of 24 years' imprisonment. (ECF #10-1 at PageID 215).

## III.   Direct appeal

On July 11, 2019, through new counsel, Mr. Brundage appealed his conviction to the Ninth District. (ECF #10-1 at PageID 220). There, he asserted two assignments of error:

4

**ASSIGNMENT OF ERROR 1:**
The trial court abused its discretion when it denied Appellant's pre-sentence motion to vacate his guilty plea.

**ASSIGNMENT OF ERROR 2:**
The trial court abused its discretion by when imposing sentence on Appellant. [*sic*]

(*Id.* at PageID 235). On February 26, 2020, the Ninth District affirmed Mr. Brundage's convictions and sentences. (*Id.* at PageID 303-10; *see also Brundage*, 2020 WL 927528). Mr. Brundage did not further appeal the Ninth District's decision to the Supreme Court of Ohio.

## IV.   Applications to reopen the direct appeal

On October 6, 2020, Mr. Brundage, representing himself, applied to reopen his direct appeal under Ohio Appellate Rule 26(B). (ECF #10-1 at PageID 313-27). In an affidavit attached to his application, Mr. Brundage argued his appellate counsel was ineffective for not raising 25 proposed assignments of error. (*Id.* at PageID 319-27). On February 18, 2021, while his first application was pending, Mr. Brundage filed a second application. (ECF #10-1 at PageID 377). There, he proposed 11 assignments of error (*id.* at PageID 380-81), most of which were in the first application (*compare id.* at PageID 319-27). On August 20, 2021, the Ninth District denied the first petition because Mr. Brundage did not demonstrate ineffective assistance of appellate counsel and he relied on facts outside the appellate record. (*Id.* at PageID 373-75). The Ninth District denied the second application because Ohio law does not permit successive applications. (*Id.* at PageID 427). Mr. Brundage did not appeal the denial of either application to the Supreme Court of Ohio.

## V.   State habeas corpus

On July 20, 2021, Mr. Brundage filed a petition for a writ of habeas corpus in the Marion County Court of Common Pleas. (ECF #14-1 at PageID 603). He raised 17 claims regarding the

propriety of his guilty plea, ineffective assistance of counsel, and judicial bias. (*See id.* at PageID 627-57).

The trial court dismissed the petition because it was procedurally barred by Mr. Brundage's failure to include an affidavit of his civil litigation history, which Ohio law requires for a state prisoner to commence a civil action against the state. (*See id.* at PageID 712-14). The trial court concluded in the alternative that had Mr. Brundage included the required affidavit, the doctrine of res judicata barred Mr. Brundage's claims because he could have raised them on direct appeal but he did not. (*Id.* at PageID 710-11).

Mr. Brundage appealed the dismissal of his petition to the Ohio Court of Appeals, Third District. (*Id.* at PageID 717). On May 31, 2022, the Third District affirmed dismissal of the petition solely because Mr. Brundage did not file the mandatory affidavit of his recent civil litigation history. (*See id.* at PageID 792-94). It did not address whether res judicata barred his claims.

Mr. Brundage further appealed the denial of his state habeas petition to the Supreme Court of Ohio. (*Id.* at PageID 813). On September 13, 2022, the Supreme Court of Ohio declined jurisdiction. (*Id.* at PageID 836; *see also Brundage v. Craig*, 194 N.E.3d 381 (table)).

#### FEDERAL HABEAS PETITION

On November 9, 2022, Mr. Brundage placed his habeas petition in the prison mailing system. (ECF #1-1 at PageID 30). He raises 11 grounds for relief:

**GROUND ONE**:
Mr. Brundage was denied due process under the Fifth, Sixth, and Fourteenth Amendments because the trial court accepted his guilty plea without establishing the factual basis for his plea.

**GROUND TWO**:
The trial court violated Mr. Brundage's Fifth, Sixth, and Fourteenth Amendment right to be present during voir dire.

**GROUND THREE**:
Mr. Brundage was denied due process by the trial court participating in his plea negotiations.

**GROUND FOUR**:
Mr. Brundage was denied due process by the trial court not adequately advising him that he was waiving right to appeal.

**GROUND FIVE**:
Mr. Brundage's constitutional rights and Ohio Rev. Code § 2943.032 were both violated by the trial court accepting his guilty plea without advising him of potential post-release control sanctions.

**GROUND SIX**:
Mr. Brundage's trial counsel provided constitutionally ineffective assistance, in violation of the Sixth Amendment.

**GROUND SEVEN**:
Mr. Brundage was denied due process by the trial court's failure to disclose its impartiality, bias, and prejudice against him.

**GROUND EIGHT**:
Mr. Brundage was denied due process by the trial court allowing false testimony and evidence while the victim made her victim-impact statement.

**GROUND NINE**:
Mr. Brundage's appellate counsel provided constitutionally ineffective assistance, in violation of the Sixth Amendment.

**GROUND TEN**:
The state violated the disclosure requirements of *Brady v. Maryland*, 373 U.S. 83 (1963) by not disclosing jailhouse phone calls where Mr. Brundage complained he was coerced by his attorneys to plead guilty and the prosecutor misrepresented facts during the hearing on Mr. Brundage's motion to withdraw his guilty plea.

**GROUND ELEVEN**:
Mr. Brundage is actually innocent.

(*See* ECF #1 at PageID 104-23; *see also* ECF #1-5 at PageID 35-58) (cleaned up).

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs Mr. Brundage's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA recognizes that "[s]tate courts are adequate forums for the vindication of federal rights" and therefore acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). It "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citation and quotation omitted). Accordingly, an application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). But additional analysis is required to determine if the District Court may review Mr. Brundage's claims on the merits.

### PROCEDURAL BARRIERS TO FEDERAL HABEAS REVIEW

Before a federal court may review a petitioner's habeas claims on the merits, the petitioner must overcome several procedural barriers. These barriers, including exhaustion of state remedies and procedural default, limit a petitioner's access to review on the merits of a constitutional claim. *Daniels v. United States*, 532 U.S. 374, 381 (2001). Put simply, federal courts may review federal claims that were evaluated on the merits by a state court. Claims there were not evaluated on the merits, either because they were never presented to the state courts (*i.e.*, they are unexhausted) or

because they were not properly presented to the state courts (*i.e.*, they are procedurally defaulted), are generally not cognizable on federal habeas review. *Bonnell v. Mitchel*, 301 F.Supp.2d 698, 722 (N.D. Ohio Feb. 4, 2004).

      **Exhaustion of Available State Court Remedies**. A court may not grant a petition for habeas corpus unless it appears the petitioner has exhausted available state court remedies, state corrective process is unavailable, or circumstances exist rendering such state process ineffective to protect the petitioner's rights. 28 U.S.C. § 2254(b)(1). Typically, the exhaustion requirement is satisfied when the petitioner fairly presents all claims to the highest court in the state in where petitioner was convicted, giving the state a full and fair opportunity to rule on the petitioner's claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A claim is fairly presented when both the factual and legal basis for the claim has been introduced to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2000). A failure to exhaust applies only where state remedies remain "available at the time of the federal petition." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). In contrast, where state court remedies are no longer available, procedural default (discussed more fully below), rather than exhaustion, applies. *Id.*

      **Procedural Default**.  Absent a petitioner demonstrating either cause and prejudice or that failure to review the claim would result in a fundamental miscarriage of justice (discussed below), a federal court will not consider the merits of procedurally defaulted claims. *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).

      There are two avenues by which a petitioner's claim may be procedurally defaulted. *Williams*, 460 F.3d at 806. First, procedural default occurs if a petitioner "fails to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*,

785 F.2d 135, 138 (6th Cir. 1986). Second, and as relevant here, a claim may be procedurally defaulted when the petitioner fails to raise it in state court and pursue it through the state's "ordinary appellate review procedures." *Id.* (citing *O'Sullivan*, 526 U.S. at 848 (1991)); *see also Baston v. Bagley*, 282 F.Supp.2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). As addressed above, "[i]f, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* Although the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims, barring federal court review. *Williams*, 460 F.3d at 806.

**Excusing a Procedural Default by Showing Cause and Prejudice**. To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749. Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default; they must present affirmative evidence or argument as to the precise cause and prejudice produced. *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005) (citing *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452 (6th Cir. 2003) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at a developed argumentation, are deemed waived.") (quotation omitted)). A finding of cause and prejudice does not entitle a petitioner to habeas relief; it only allows a federal court to consider the merits of a claim that otherwise would

have been procedurally defaulted. *See Martinez v. Ryan*, 566 U.S. 1, 10 (2012); *see also Coleman*, 501 U.S. at 750.

A showing of cause for the default requires more than the mere proffer of an excuse. Rather, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Neither a petitioner's pro se status nor his ignorance of the law and procedural filing requirements are enough to establish cause to overcome procedural default. *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

To demonstrate prejudice sufficient to overcome procedural default, a petitioner must show more than mere errors in the state trial creating a possibility of prejudice; rather, the petitioner must show that the alleged errors worked to the petitioner's actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *Murray*, 477 U.S. at 494. There is no prejudice where the petitioner does not show a reasonable probability that the result of the proceeding would have been different. *Ambrose v. Booker*, 801 F.3d 567, 577-78 (6th Cir. 2015).

**Actual Innocence Exception**. Alternatively, a petitioner may overcome procedural default by showing that a fundamental miscarriage of justice will occur if the claims are not considered. *Coleman*, 501 U.S. at 750; *Murray*, 477 U.S. at 495. A fundamental miscarriage of justice occurs in the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96; *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995). Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v.*

11

*United States*, 523 U.S. 614, 623 (1998). A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

## Analysis

The State argues Mr. Brundage's petition is procedurally defaulted in its entirety because he did not pursue his direct appeal or the denials of his applications to reopen his direct appeal to the Supreme Court of Ohio. (ECF #10 at PageID 156, 159). Mr. Brundage responds that he "did in fact present his assignments or error on their merits to the Ohio courts" and "[t]he Ohio Supreme Court declined jurisdiction on petitioner's Habeas Corpus." (ECF #12 at PageID 594).

**I.      Grounds One through Ten are procedurally defaulted because Mr. Brundage did not present them to the state courts for review.**

As discussed above, a habeas petitioner procedurally defaults a federal constitutional claim (thus barring habeas review) by not raising a claim in state court and pursuing that claim through the state's "ordinary appellate review procedures." *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). At the time of the federal habeas petition, if state law no longer allows the petitioner to raise the claim, then the claim is procedurally defaulted. *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982); *see also Coleman v. Thompson*, 501 U.S. at 731-32. Where state-law remedies are no longer available to a petitioner because the petitioner did not pursue them within the required time, procedural default bars federal habeas review. *Williams*, 460 F.3d at 806.

Out of the 11 grounds Mr. Brundage raised in his habeas petition, only Ground One appears in his direct appeal, where he argued the trial court erred in denying his motion to vacate his guilty plea.[2] (*See* ECF #10-1 at PageID 303-06; *see also Brundage*, 2020 WL 927528). After the Ninth District affirmed the trial court's decision, Mr. Brundage did not pursue any direct review from the Supreme Court of Ohio when it was available. By not presenting his claims to Ohio's highest court for review, any grounds for relief that could have been raised in that appeal are procedurally defaulted. *See O'Sullivan*, 526 U.S. at 847-48 (holding a claim procedurally defaulted where the petitioner did not appeal the claim to the state supreme court); *Olmstead v. Phillips*, No. 1:20-CV-01603-BYP, 2023 WL 4162542, at *14 (N.D. Ohio May 31, 2023), *report and recommendation adopted*, 2023 WL 4157250 (N.D. Ohio June 23, 2023) (dismissing claims as procedurally defaulted where they were presented to the Court of Appeals but not the Supreme Court of Ohio). Grounds One through Eight and Ground Ten each could have been raised on direct appeal but were not and so they are procedurally defaulted.[3]

Ground Nine alleges ineffective assistance of appellate counsel and it too is procedurally defaulted under a similar analysis. Ohio law requires such claims be raised in an application to reopen the direct appeal, not in the direct appeal itself. *See* Ohio App. R. 26(B); *State v. Murnahan*, 584 N.E.2d 1204, 1205 (Ohio 1992). Mr. Brundage argued his appellate counsel was ineffective in two applications to reopen his appeal. (*See* ECF #10-1 at PageID 319-27, 380-81). The Ninth District rejected his first application on the merits (*see id.* at PageID 373-75) and rejected his

---

[2] Mr. Brundage also challenged the imposition of consecutive sentences in his direct appeal (*see* ECF #10-1 at PageID 235), but he does not raise that issue in his habeas petition and so I do not address it.

[3] As Ground Eleven claims actual innocence, I analyze it below with the actual-innocence exception to procedural default.

second because Ohio law does not permit successive applications (*see id.* at PageID 427). But again

Mr. Brundage did not pursue direct review from the Supreme Court of Ohio for either

application. Thus, he procedurally defaulted Ground Nine as well. *See O'Sullivan*, 526 U.S. at

847-48; *Olmstead*, 2023 WL 4162542, at *14.

## II.     Mr. Brundage has not shown cause and prejudice to excuse the default and his Ohio habeas corpus action does not save his claims from procedural default.

Mr. Brundage's procedural defaults can be excused if he demonstrates both cause for the

default and prejudice from the violation of federal law. *See Coleman*, 501 U.S. at 749. Mr.

Brundage does not identify any cause for why he did not seek direct review from the Supreme

Court of Ohio on his direct appeal or his applications to reopen. Rather, he argues in his Traverse

that he did present his claims to the Supreme Court of Ohio via his state habeas corpus action.

(*See* ECF #12 at PageID 592). However, his state habeas corpus action does not save his claims

from procedural default.

A claim cannot be heard on federal habeas review that has been presented in state court,

"but in such a manner that the state court could not, consistent with its own procedural rules,

have entertained it." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Ohio's writ of habeas corpus

is generally available "only when the petitioner's maximum sentence has expired and he is being

held unlawfully" or "when the sentencing court patently and unambiguously lacked subject-matter

jurisdiction." *State ex rel. Missimer v. Forshey*, 221 N.E.3d 824, 826 (Ohio 2023), *cert. denied*

144 S.Ct. 438 (2023). Unlike its federal counterpart, Ohio's writ does not permit non-

jurisdictional claims (*i.e.*, federal constitutional claims) when there is an adequate legal remedy,

such as an appeal or postconviction petition under Revised Code § 2953.21. *See State ex rel. Pirman*

*v. Money*, 635 N.E.2d 26, 29 (Ohio 1994). Thus, the Ohio court could not hear Mr. Brundage's

claims in his state habeas action consistent with its own procedure. Consequently, the Ohio habeas action cannot save his claims from procedural default. *See Jury v. Scott*, No. 3:17-CV-304, 2017 WL 11707594, at *13 (N.D. Ohio Oct. 13, 2017) (federal habeas petitioner had procedurally defaulted his claim that his indictment was invalid by raising it for the first time in an Ohio habeas action instead of during direct appeal), *report and recommendation adopted*, 2019 WL 1409376 (N.D. Ohio Mar. 28, 2019).[4]

### III.   Mr. Brundage has not demonstrated he is actually innocent of the offenses to which he pled guilty and the more or equally serious offenses that were dismissed.

Mr. Brundage also argues that a fundamental miscarriage of justice will occur if his default is not excused because he is actually innocent of the sex offenses for which he was convicted. (*See* ECF #12 at PageID 593). He also argues his innocence as Ground Eleven for habeas relief (*see* ECF #1-5 at PageID 60-61), but freestanding claims of actual innocence are not themselves a ground for federal habeas relief absent an independent constitutional violation. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Because I must liberally interpret pro se pleadings, *see Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985), I view Ground Eleven as an argument that the actual-innocence exception allows this Court to excuse his procedural defaults.

The actual-innocence exception allows federal habeas review of Mr. Brundage's procedurally defaulted claims if "he can establish that the constitutional errors in his plea colloquy 'has probably resulted in the conviction of one who is actually innocent.'" *Bousley*, 523 U.S. at 623 (quoting *Murray*, 477 U.S. at 496). Importantly, "actual innocence" here means factual innocence,

---

[4]      Because I conclude the state court could not properly hear the merits of Mr. Brundage's claims in an Ohio habeas action, I do not reach the issue of whether the requirement of Revised Code § 2969.25 to attach certain documents may operate as an adequate and independent state procedural bar to hearing the claims on federal habeas review.

not mere legal insufficiency. *Id.* A valid actual innocence claim must be supported by new reliable evidence, such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence, that was not presented at trial that is so strong a court cannot have confidence in the outcome of the petitioner's trial. *Schlup*, 513 U.S. at 324. To establish actual innocence, Mr. Brundage must demonstrate that in light of all the evidence, old and new, it is more likely than not that no reasonable juror would have convicted him. *Id.* at 327-328 (cleaned up).

Mr. Brundage pled guilty to the charges for which he asserts his actual innocence. "Though the result often seems counterintuitive, a defendant that pled guilty still may assert [an actual-innocence] claim." *See Eads v. Bottom*, No. 6:13-CV-29, 2014 WL 2742581, at *5 (E.D. Ky. June 12, 2014) (citations omitted). But such a case "creates a host of analytical difficulties, given that there is no jury (or factfinder) finding, the record is normally abbreviated, the state did not 'present' evidence in a fashion designed to establish guilt beyond a reasonable doubt, and the petitioner typically has confirmed his guilt through the solemnity of a plea colloquy." *Id.* (collecting cases).

Additionally, in cases where the State has forgone more or equally serious charges in the course of plea bargaining, a petitioner's showing of actual innocence must also extend to those charges as well. *Bousley*, 523 U.S. at 624 (more serious charges); *Witham v. United States*, 97 F.4th 1027, 1034 (6th Cir. 2024) (equally serious charges). Thus, Mr. Brundage must establish his factual innocence not only of the six first-, third-, and fourth-degree felonies to which he pled guilty, he must also establish his factual innocence of the eight more or equally serious felonies the State dismissed in exchange for his guilty plea. (*See* ECF #10-1 at PageID 180-85).

While Mr. Brundage argues his innocence of the sex offenses to which he pled guilty, he does not mention any evidence that he was innocent of the dismissed fourth-degree felony of

16

corrupting a juvenile with drugs, an equally serious charge to the fourth-degree felony of gross sexual imposition to which he pled guilty. (*See* ECF #10-1 at PageID 180, 190). This alone bars excusing his procedural defaults. *See Witham*, 97 F.4th at 1034 ("because neither [petitioner] has shown actual innocence of the dismissed charges, we may not excuse their procedural defaults.").

Additionally, Mr. Brundage's arguments regarding the charges to which he pled guilty do not meet the high burden to demonstrate actual innocence. First, he argues he was not in Summit County, Ohio when the sex offenses were alleged to take place. (ECF #12 at PageID 591). He advances that he was out of Ohio during several weeks of March 2017; in Columbus, Ohio and Sandusky, Ohio from April through May 2017; and in Beachwood, Ohio from May through June 2017. (*See* ECF #1-6 at PageID 82). He also claims his cell phone's location data and the GPS data from the truck he bought in 2017 corroborate his whereabouts that year. (ECF #1-5 at PageID 60; ECF #1-9 at PageID 82). However, all of the offenses in the indictment were alleged to occur from October 1, 2016 through January 1, 2017. (*See* ECF #10-1 at PageID 180-85). Evidence that Mr. Brundage was elsewhere in 2017 has no bearing on whether he is innocent of crimes occurring the year before.

Next, Mr. Brundage argues his medical conditions made it impossible for him to commit two of the rapes as the victims alleged. First, he argues he could not have sexually assaulted one victim in September 2015 as alleged because the victim alleged Mr. Brundage held her down while sexually assaulting her but he was bound to crutches due to a recent knee surgery. (ECF #1-5 at PageID 60). Mr. Brundage's victims were juveniles, ranging in age from as young as nine to at most sixteen years old. (*See* ECF #10-1 at PageID 180-85). It is not so improbable for a grown adult male

to be able to hold a juvenile down while confined to crutches that no reasonable juror would have convicted him of rape.

Second, he argues he could not have inserted his fingers into another victim as alleged because his bilateral carpal tunnel syndrome removed all feeling in his fingers. (ECF #1-5 at PageID 60). Mr. Brundage could still commit rape by his fingers despite a lack of feeling in them. Rape requires "sexual conduct," *see* Ohio Rev. Code § 2907.02(A), and that term's definition does not require feeling or sensation. Ohio Rev. Code § 2907.01(A) ("'Sexual conduct' means . . . without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another."). That one can engage in sexual conduct (and thus commit rape) with an apparatus or object instead of a feeling body part forecloses Mr. Brundage's argument that he could not commit rape by his fingers because he could not personally feel the act.

Mr. Brundage's other arguments do not help establish his actual innocence to the seventeen indicted offenses. He argues that a potential witness, the mother of three of the victims, admitted to lying to investigators, but this does little to prove his factual innocence. The impact of her alleged lack of credibility is speculative because it presumes the mother would testify had Mr. Brundage gone to trial. And had Mr. Brundage gone to trial, it is likely the State would have other evidence of the sexual assaults, including other witnesses such as the multiple juvenile victims and potentially their parents. But even presuming she testified, "[l]atter-day impeachment evidence seldom, if ever, makes a clear and convincing showing that no reasonable juror would have believed the heart of the witness's account." *Sawyer v. Whitley*, 505 U.S. 333, 334 (1992); *see also Hubbard v. Rewerts*, 98 F.4th 736, 747 (6th Cir. 2024) (noting the actual innocence exception

"requires [a] petitioner[] . . . to make a gateway showing that he didn't do the crime (which goes to actual innocence) instead of merely attacking the state's case (which could show legal innocence)."). Mr. Brundage's allegation that one potential witness who, among other witnesses, might testify she had admitted to lying is not evidence "so strong a court cannot have confidence in the outcome" of his plea. *See Schlup*, 513 U.S. at 324. This is especially so given the court must consider all the evidence, old and new, including the potential testimony from multiple victims, whose credibility Mr. Brundage did not attack.

Mr. Brundage also points to footage from his gym's security cameras of him teaching the victims' gym classes on the dates of the offenses. (ECF #1-5 at PageID 61). But it appears no one has the footage, much less watched it. Mr. Brundage can only speculate what the footage might show and whether it would be exculpatory or inculpatory. But even if Mr. Brundage could produce the footage years after the alleged offenses and it showed no sexual assaults occurred at the gym, statements by one victim at Mr. Brundage's sentencing indicate at least some of the sex offenses occurred elsewhere. (*See* ECF #10-4 at PageID 548; *see Luster v. United States*, 168 F.3d 913, 915 (6th Cir. 1999) (relying in part on statements in a sentencing hearing to determine an actual-innocence claim after a guilty plea)). Under the best possible scenario, the footage could show Mr. Brundage's innocence of some of the offenses, but not all of them, which is required to excuse his procedural defaults.

Finally, Mr. Brundage argues his attorneys were ineffective in investigating his case and unearthing proof of his innocence. (ECF #1-5 at PageID 60-61; ECF #12 at PageID 591). But ineffective representation of counsel is insufficient to support a claim of actual innocence. *Linder v.*

*Haviland*, No. 1:14-CV-1489, 2016 WL 11737762, at *8 (N.D. Ohio May 31, 2016), *report and recommendation adopted*, 2016 WL 7664734 (N.D. Ohio Dec. 15, 2016).

Mr. Brundage bears the burden of establishing his actual innocence before his procedural defaults can be excused. He does not advance any evidence of innocence of the dismissed charges. Much of the evidence he does advance has no relevance to the charges to which he pled guilty. The evidence that is relevant does not show that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329.

Because all the grounds for relief are procedurally defaulted and Mr. Brundage has established neither cause and prejudice for the default or his actual innocence, I recommend the District Court **DISMISS** the entire petition as procedurally defaulted.

## CERTIFICATE OF APPEALABILITY

A habeas petitioner may not appeal the denial of an application for a writ of habeas corpus unless a judge issues a COA and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a district court has determined a petitioner's constitutional claim to be without merit, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" before receiving a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether (1) the petition states a valid claim of the denial of a constitutional right and (2) the district court was correct in its procedural ruling. *Id.* A

20

showing that the appeal would succeed on the claim is not required to grant a COA. *Miller-El*, 537 U.S. at 337.

Here, jurists of reason could not find it debatable whether Mr. Brundage has procedurally defaulted his grounds for habeas relief and failed to demonstrate his factual innocence. Therefore, I recommend the District Court **DENY** Mr. Brundage a COA.

## CONCLUSION AND RECOMMENDATION

For these reasons, I conclude that all eleven grounds for relief are procedurally defaulted and that Mr. Brundage has established neither cause and prejudice for the default nor his actual innocence. I thus recommend the District Court **DISMISS** Mr. Brundage's petition as procedurally defaulted. I further recommend the District Court **DENY** a certificate of appealability.

Dated: January 23, 2025

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

## Objections, Review, and Appeal

**Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge.** *See* **Fed. R. Civ. P. 72(b)(2);** *see also* **28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.**

**Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or**

whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).